1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10    GARY L. HARPOOL,

11              Plaintiff,                    No. 2: 10-cv-1253 MCE GGH P

12        vs.

13    M. BEYER, et al.,

14              Defendants.          FINDINGS AND RECOMMENDATIONS

15    _____/

16    Introduction

17              Pending before the court in this § 1983 prisoner civil rights action is

18    defendants' motion for summary judgment filed on October 26, 2011 (docket # 55); plaintiff

19    filed his opposition on November 7, 2011 (# 56), after which defendants filed a reply on

20    November 16, 2011 (# 58).  By order, filed on February 17, 2012 (# 62), following adjudication

21    of plaintiff's motion to compel discovery, plaintiff was granted forty-five days to file a

22    supplement to his opposition, which was filed on March 28, 2012 (# 66); defendants were

23    granted an extension of time to file a reply to the supplemental opposition, which they did on

24    April 18, 2012 (# 69).  Also pending is plaintiff's motion for sanctions, filed on March 12, 2012

25    (# 64), and opposed by defendants on March 26, 2012 (# 65).  The subsequent  motion for

26    sanctions, filed on May 7, 2012 (# 70), which defendants opposed on May 18, 2012 (# 71) as

1  duplicative, is properly construed as a reply.  The court will first set forth the remaining

2  allegations of plaintiff's first amended complaint, proceed to consider plaintiff's motion for

3  sanctions for defendants' alleged failure to comply fully with a court order regarding discovery

4  production and will then address defendants' dispositive motion.

5  Plaintiff's Allegations

6          Plaintiff now proceeds against defendants Correctional Officer (C/O) Beyer; C/O

7  Carter; and Correctional Sergeant Fowler in the remaining allegations of the first amended

8  complaint.  On April 29, 2009, defendant C/O Beyer ordered plaintiff to pack his property for a

9  move to a different housing unit despite plaintiff's explanation to him that he had physical

10  limitations and qualifying disabilities under the Americans With Disabilities Act (ADA) and that

11  he had been ordered by the chief medical officer not to lift more than two pounds.  First

12  Amended Complaint (FAC), p. 3.  Plaintiff tried to move several boxes to show defendant Beyer

13  the chrono showing he had had recent surgery on the ulnar nerve in his left hand, which had

14  caused atrophy of the muscle.  Id.  In doing so, he re-injured his ulnar nerve causing extreme pain

15  and more muscle atrophy.  Id. at 4.  Plaintiff asked to speak to a lieutenant or sergeant; instead,

16  defendant Beyer hand-cuffed him, placed him in Administrative Segregation and issued false

17  misconduct charges against him alleging he was delaying a peace officer and refusing to move.

18  Id., at 3-4, 15, 25-29.

19          Plaintiff claims that the day before, on April 28, 2010, defendant C/O Carter had

20  made false allegations against him (plaintiff) to defendant Corr. Sgt. Fowler which had led to

21  defendant Fowler's threatening to move plaintiff if he were disrespectful toward any C/O.  FAC,

22  p. 4.  Defendant Carter accused plaintiff of "snitching on the C/O's" by writing inmate

23  grievances and Men's Advisory Council (MAC) Reports to the associate warden.  Id.  Plaintiff

24  therefore alleges retaliation against him by these three defendants for his grievances, resulting in

25  false disciplinary charges in violation of his First Amendment rights.  Id.  He also alleges that

26  defendant Beyer violated his rights under the ADA.  Id., at 4-5.  Plaintiff seeks injunctive relief

1    and money damages. <u>Id.</u>, at 11.[1]

2           Plaintiff later proceeds from the position that his claims also arise under the

3    Eighth Amendment for deliberate indifference to serious medical needs and alleges (unspecified)

4    Fourth and Fourteenth Amendment violations, which defendants observe in their summary

5    judgment motion (MSJ).  MSJ, docket # 55-1 at 4, citing Docket # 48 at 3-4.[2]  Plaintiff did not

6    properly seek to amend or supplement the claims of his first amended complaint; however, he

7    does make an express reference in the first amended complaint to his Fourth (as well as First

8    Amendment) rights having been violated by defendant Beyer in having denied his request to

9    speak with a lieutenant or sergeant with regard to his physical limitations.  FAC, pp. 3-4.

10   Although the claim does not appear to be colorable, the court will liberally construe the

11   allegations to include a claim of a Fourth Amendment rights violation and address it below.  As

12   for the Eighth Amendment deliberate indifference claim, it could be logically inferred with

13   respect to defendant Beyer under the circumstances of that claim.  To the extent plaintiff also

14   seeks to invoke the Fourteenth Amendment's due process and, possibly, equal protection

15   provisions, the gravamen of any supplementary cause of action would appear to arise under the

16   Eighth Amendment.  <u>Graham v. Connor</u>, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989)

17   (amendment providing "an explicit textual source of constitutional protection...must be the guide

18   for analyzing" claims implicating government conduct over the "more generalized notion of

19   'substantive due process....'"); <u>Whitley v. Albers</u>, 475 U.S. 312, 327,102 S. Ct. 1078 (1986)

20   (Fourteenth Amendment Due Process Clause affords prison inmate "no greater protection than

21   does the Cruel and Unusual Punishments Clause" of the Eighth Amendment.  Nevertheless, the

22   court will also address any claim under the Fourteenth Amendment below.

23   \\\\\

24

25         [1] As set forth in the court's order, filed on 2/17/12 (# 62), pp. 1-2.

26         [2] The court's electronic pagination is referenced.

Plaintiff's Motion for Sanctions

Plaintiff asks for sanctions to be imposed upon defendants for what he contends is their failure to comply with the court's February 17, 2012, order, wherein the undersigned had, while denying the greater part of plaintiff's motion to compel discovery, ordered defendants to produce the portion of the ADA logbook at CSP-Solano sought by plaintiff in his third request for production from defendant Fowler: "'the (ADA) log book that was in building #3 at CSP-Solano on or about April 27, 2009 and/or April 28, 2009'" and from defendants Beyer and Carter: "production of the same logbook for 'on or about April 29, 2009.'"  See Order at # 62, pp. 9-10, 12.  The court noted the apparent particular relevance of the documentation with respect to plaintiff's specific claim under the ADA against defendant Beyer.  Id., at 10. Defendants' counsel was also directed to ensure plaintiff prompt access to his medical and central file records at Pleasant Valley State Prison (PVSP) if plaintiff wished to inspect them there.  Id., at 10, 12

By his motion, plaintiff seeks to implicate defendants for their subsequent failure to produce the logbook documentation premised on the assertion that while a binder of documents that show inmates with ADA disabilities is maintained in Building 3 at CSP-Solano, it is only for the inmates currently confined there and that once a prisoner has transferred, the documents that apply to that prisoner are removed from the binder and discarded.  Motion at # 64, p. 2 & at  p. 14, attaching defendants' further response to third request for production.  The response further asserts that no pages referencing plaintiff and his disability from April 2009, have been available since his transfer from CSP-Solano to PVSP, which occurred on September 1, 2010.  Id. at 14.  Plaintiff maintains that the documentation would have shown that plaintiff was in fact an ADA prisoner with a physical limitation that included that lifting with the left arm was to be limited to no more than two pounds "due to muscle atrophy, compactment syndrome" and would have shown plaintiff had a left leg weakness.  Id. at 5.  Plaintiff maintains that his long experience as a prisoner, since 1982, has made him aware of how records are kept in his

4

1  medical and central files and that all ADA documents are generated by an ADA coordinator who

2  produces the documentation and stores the information within computer files.  Id. at 2-3.

3  Plaintiff accuses the defendants of deliberate destruction or discarding of the logbook

4  documentation which evidence would have supported his claim of being an ADA prisoner with

5  physical limitations whose ADA rights defendant Beyer allegedly violated.  Id. at 3, 5.  Plaintiff

6  also contends, as of the date of his filing the instant motion, that defendants' counsel failed to

7  comply with the Feb. 17, 2012, order to provide plaintiff prompt access to his medical and

8  central file records; plaintiff maintains that the records should have accompanied him from CSP-

9  Solano to PVSP to Deuel Vocational Institution (DVI), where plaintiff is presently incarcerated.

10  Id. at 4, 10.  Plaintiff seeks various forms of sanctions from staying/delaying consideration of the

11  motion for summary judgment to a default judgment entered against defendants.  Id. at 8.

12          In opposition, defendants' counsel avers that he acted promptly upon receiving

13  plaintiff's February 29, 2012, notice that he wished to inspect his prison files by, the following

14  Monday March 5, 2012, contacting the DVI litigation coordinator and requesting that plaintiff be

15  allowed the opportunity to inspect his central and medical files by March 16, 2012, and later that

16  day, confirming the request by email.  Opposition (Opp.) at # 65, p. 2, citing Declaration of

17  David Carrasco, Supervising Deputy Attorney General, ¶¶ 3-4.  Counsel includes a copy of a

18  CDC-128 B document that he received on March 14, 2012, confirming plaintiff's review of his

19  central file.  Id., at 2, citing Carrasco Dec., ¶ 5 & Exhibit 1.  The form at Ex. 1 contains what

20  appears to be plaintiff's signature, as well as a "staff witness signature," a checked box next to

21  the statement "I have reviewed my central file," and a date of 3/14/12.  The form at Ex. 2

22  contains a statement indicating that plaintiff had "reviewed his Department of Medical Records

23  Chart" without confidential information having been removed prior to the review on 3/16/12,

24  evidently signed by plaintiff on that date and by a health records technician, which counsel states

25  that he received on March 16, 2012.  Id., citing Carrasco Dec., ¶ 6 & Ex. 2.

26  \\\\\

1    As to plaintiff's allegations regarding the ADA logbook, defendants set forth that

2  each building at CSP-Solano has a binder with lists of prisoners with disabilities and information

3  about their disabilities, that officers assigned to each building are responsible for their own

4  binders and for keeping them updated with current information as well as for purging the pages

5  containing information about prisoners no longer housed there.  Opp., p. 2, citing Declaration of

6  H. Johnson, employed by CDCR at CSP-Solano as ADA Counselor, ¶¶ 1-3.  Thus, according to

7  declarant Johnson, while "[a] binder of documents listing inmates with ADA disabilities was and

8  is maintained at CSP-Solano, Building 3," it only lists those inmates who are currently housed in

9  that building and in that institution.  Id., citing Johnson Dec., ¶ 4.  Once a prisoner is transferred

10  to another institution, according to H. Johnson, the documents concerning that inmate are

11  removed and discarded from the binder, and it is one of ADA Counselor Johnson's duties to

12  inspect each building's binder to make sure they are current and pages that concern prisoners no

13  longer housed in a particular building have been purged.  Id. at 3, citing Johnson Dec., ¶¶ 5-6.

14  Therefore, any pages that referenced plaintiff and his disabilities in April 2009 have not been

15  available since his Sept. 1, 2010, transfer to PVSP from CSP-Solano.  Id., citing Johnson Dec., ¶

16  7.  Nevertheless, declarant Johnson avers that after searching the binders in each building, she

17  also searched her office records for information concerning plaintiff but that as her records only

18  go back to April of 2011, his name did not appear on those records.  Id., citing Johnson Dec., ¶ 8.

19   Therefore, defendants contend, as a reasonable search was conducted but disclosed no

20  documents responsive to plaintiff's request, they should not be subject to sanctions.  Id.

21    Plaintiff's motion for additional sanctions, filed on May 7, 2012, which was

22  opposed by defendants as, inter alia, duplicative, on May 18, 2012, is more properly deemed a

23  reply (if a belated one) to defendants' opposition to plaintiff's March 12, 2012, motion for

24  sanctions, and is so construed by the undersigned.  In the reply, plaintiff concedes that

25  defendants' counsel did arrange for plaintiff's inspection of his medical and central files but

26  complains that he has yet to receive any of the copies he sought from his review of the central file

1  documents and has not been provided some of the copies he asked for from the medical file

2  following his review.   Reply, # 70, pp. 1-3.  Plaintiff also emphasizes defendants' declaration

3  that correctional officers assigned to each building are responsible for keeping their ADA binders

4  updated with current information on prisoners in their building but again asserts that ADA staff

5  at CSP-Solano which produces such information keep it stored on computer and/or in the

6  "Archive Dept."  Id., at 3.  Plaintiff provides no evidence for this or for any alleged destruction of

7  documents (spoliation) beyond his belief based on his long years of incarceration.  The court

8  cannot find defendants to be in default on plaintiff's ADA claim simply because their record-

9  keeping with respect to ADA prison logbooks is not to plaintiff's liking.[3]  On the other hand,

10  neither can defendant Beyer show that there was no evidence in the ADA logbook that should

11  have alerted him to plaintiff's disability or physical limitations at the relevant period.  As for

12  plaintiff's access to his prison and medical records, defendant's counsel discharged the court's

13  order by undisputedly making sure that he had reasonably timely access and sanctions cannot be

14  imposed on the ground of plaintiff's not yet having achieved all the document copies he sought

15  after his review.   Plaintiff's motion for sanctions will be denied.

16  Motion for Summary Judgment

17          Defendants move for summary judgment on the grounds that (1) plaintiff's

18  retaliation claims fail because defendants neither falsely accused nor threatened him or took any

19  action against him motivated by plaintiff's participation in a protected activity; (2) plaintiff's

20  Fourth, Eighth and Fourteenth Amendment claims fail because there is no evidence to support

21  them; (3) defendants are entitled to qualified immunity because they violated no constitutional

22  right.  Notice of Motion for Summary Judgment, p. 1.  Defendants do not address plaintiff's

23  claim against defendant Beyer that plaintiff's rights under the ADA were violated.

24

25          [3]  Moreover, it makes sense to use the ADA binders only for current prisoners at that location.  It would not make sense to store this transient information as it would not serve much purpose for housing officers, i.e., why would they care that an inmate previously housed at a

26  specific location, but now moved, had an ADA accommodation chrono.

1          *Summary Judgment Standards under Rule 56*

2          Summary judgment is appropriate when it is demonstrated that there exists "no

3  genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

4  law." Fed. R. Civ. P. 56(c).

5          Under summary judgment practice, the moving party

6          always bears the initial responsibility of informing the district court
           of the basis for its motion, and identifying those portions of "the
7          pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
8          demonstrate the absence of a genuine issue of material fact.

9  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

10 P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

11 issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

12 depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment

13 should be entered, after adequate time for discovery and upon motion, against a party who fails to

14 make a showing sufficient to establish the existence of an element essential to that party's case,

15 and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552.

16 "[A] complete failure of proof concerning an essential element of the nonmoving party's case

17 necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment

18 should be granted, "so long as whatever is before the district court demonstrates that the standard

19 for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at

20 2553.

21         If the moving party meets its initial responsibility, the burden then shifts to the

22 opposing party to establish that a genuine issue as to any material fact actually does exist. See

23 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

24 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

25 not rely upon the allegations or denials of its pleadings but is required to tender evidence of

26 specific facts in the form of affidavits, and/or admissible discovery material, in support of its

1  contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

2  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

3  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

4  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

5  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

6  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

7  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

8         In the endeavor to establish the existence of a factual dispute, the opposing party

9  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

10  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

11  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

12  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

13  genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

14  56(e) advisory committee's note on 1963 amendments).

15         In resolving the summary judgment motion, the court examines the pleadings,

16  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

17  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

18  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

19  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

20  at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

21  obligation to produce a factual predicate from which the inference may be drawn.  See Richards

22  v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

23  (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

24  simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

25  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

26  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On December 7, 2010 (docket # 21), the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).  The above advice would, however, seem to be unnecessary as the Ninth Circuit has held that procedural requirements applied to ordinary litigants at summary judgment do not apply to prisoner pro se litigants.  In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the district courts were cautioned to "construe liberally motion papers and pleadings filed by pro se inmates and ... avoid applying summary judgment rules strictly." Id. at 1150.  No example or further definition of "liberal" construction or "too strict" application of rules was given in Ponder suggesting that any jurist would know inherently when to dispense with the wording of rules.  Since the application of any rule which results in adverse consequences to the pro se inmate could always be construed in hindsight as not liberal enough a construction, or too strict an application, it appears that only the essentials of summary judgment, i.e., declarations or testimony under oath, and presentation of evidence not grossly at odds with rules of evidence, need be submitted by the pro se party.

### *Plaintiff's Deviation from Strict Compliance with Applicable Rules*

Defendants correctly contend that plaintiff fails to comply with Local Rule 260, specifically that portion of L.R. 260(b) which requires the opposing party to a summary judgment motion to:

> reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

Even though, as defendants note, this omission was pointed out by defendants in their original reply to the original opposition, plaintiff did not correct this defect in his supplemental opposition.  See Reply to Opposition (# 58), pp. 2-3; Reply to Supplemental Opp. (# 69), pp. 3-4.

10

1    This is particularly puzzling, even inexplicable, in light of the fact that plaintiff quotes from L. R.

2    260(b) at the outset of his opposition.  See Opp. (# 56), p. 4.  Nor did plaintiff, as defendants also

3    observe, file all the evidentiary documents to support his disputed facts as required by L.R.

4    260(b).  Id.  However, while the Ninth Circuit has said "pro se litigants must follow the same

5    rules of procedure that govern other litigants," King v. Atiyeh, 814 F.2d 565, 567 (9th Cir.1987),

6    it has also stated that it remains "mindful of Supreme Court precedent that instructs federal

7    courts liberally to construe the inartful pleading of pro se litigants," Ferdik v. Bonzelet, 963 F.2d

8    1258, 1261 (9th Cir.1992) (quotations/citations omitted), and "has a duty to ensure that pro se

9    litigants do not lose their right to a hearing on the merits of their claim due to ignorance of

10   technical procedural requirements," Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th

11   Cir.1988); see also, Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008) ("We have a 'duty ... to

12   construe pro se pleadings liberally,' especially when filed by prisoners.  Hamilton v. United

13   States, 67 F.3d 761, 764 (9th Cir.1995) (citing Hughes v. Rowe, 449 U.S. 5, 9, 101 S.Ct. 173, 66

14   L.Ed.2d 163 (1980)).").  Moreover, as noted above, Thomas v. Ponder, 611 F.3d at 1150, has

15   placed the onus on district courts to "construe liberally motion papers and pleadings filed by *pro*

16   *se* inmates and ... avoid applying summary judgment rules strictly."  Therefore, it does not appear

17   that strict compliance with the rules is to be exacted from a pro se prisoner plaintiff and the court

18   must comb through various filings and exhibits in order to determine whether there exists

19   sufficient supporting evidence to determine that plaintiff has identified any genuine issue of

20   material fact that remains in dispute.

21            Defendant Beyer[4]

22            *Undisputed Facts*

23            The following of defendants' undisputed facts (DUF) are either not disputed by

24   plaintiff, or following the court's review of the evidence submitted, have been either deemed

25   _____

26   [4] Undisputed facts regarding defendants Carter and Fowler are included in a subsequent
     section addressing plaintiff's claims against those defendants.

1   undisputed or modified by the court to state an undisputed fact based on the evidence:  At the

2   relevant time, plaintiff, a prisoner in the custody of the California Department of Corrections and

3   Rehabilitation (CDCR), was housed at California State Prison - Solano (CSP-Sol).  Defendants'

4   Undisputed Facts (DUF) # 1.  In April 2009, defendant Beyer was a CDCR Correctional Officer

5   (C/O) at CSP–Sol, assigned to Facility I, Building 3. DUF # 2.  On April 29, 2009, defendant

6   Beyer received a CDC 154 form instructing him to move plaintiff from his assigned cell in

7   Building 3 to a cell in Building 6.  DUF # 5 [citing dkt # 55-3, defendant Beyer's Declaration,¶ 3

8   & Ex. 1, Rules Violation Report for willfully resisting, delaying or obstructing any peace officer

9   in the performance of their duties, dated as signed by defendant Beyer on 5/03/09]].   Upon

10   receiving the CDC 154 form, defendant Beyer informed plaintiff of the bed move, and ordered

11   him to gather his belongings and move.  DUF # 6 [id., ¶ 4 & Ex. 1].  Plaintiff remained in

12   Administrative Segregation (ad-seg) for eight to ten days.  DUF # 12.  Plaintiff did not show

13   defendant Beyer any documentation which placed a limit on how much plaintiff could lift.

14   Defendant Beyer also issued a Rules Violation Report charging plaintiff with delaying a peace

15   officer.  DUF # 13 [Beyer Dec. ¶ 10 & Ex. 1].  The court also finds that it is undisputed that

16   plaintiff informed defendant Beyer that he wanted to speak to a sergeant or a lieutenant before

17   moving.  DUF # 7 [modified].  The court finds that portion of DUF # 11 that states that

18   defendant Beyer summoned other officers to handcuff and escort plaintiff to the Administrative

19   Segregation Unit to be undisputed, although plaintiff takes issue with this course of action being

20   based on plaintiff's refusal to obey defendant Beyer's repeated order.  See below.  Plaintiff was

21   found guilty of the charge, but lost no credits as a result.  DUF # 14.  The court notes that

22   plaintiff was not assessed a credit loss evidently because the hearing date was not held within 30

23   days of service of the RVR, that is, because prison staff had failed to meet the requisite time

24   restraints.  Dkt # 55-3, Ex. 1.  The court also notes that on April 29, 2009, it is undisputed that

25   defendant Beyer was aware that plaintiff had physical disabilities.  The undersigned finds that the

26   record demonstrates that plaintiff was issued a comprehensive accommodation chrono, dated

1    June 4, 2009, a little more than a month later, limiting plaintiff to lifting two pounds or less for a

2    year and also that plaintiff was issued a six-month chrono as of October 23, 2007 [or November

3    3, 2007],[5] limiting plaintiff's use of his left arm to lifting no greater than two pounds, as well as a

4    chrono on January 15, 2008, for a period of one year, recommending, inter alia, no lifting with

5    his left hand.  MSJ, Ex. 3, plaintiff's response to request for production of documents.  MSJ  (#

6    55-4), pp. 16-18); Opposition (Opp.) (# 56), pp. 58-60.  In the January, 2008 chrono, plaintiff's

7    medical problem is described: "Inmate is section D-DNM Mobility Impaired Secondary to

8    Severe Atrophy Left Hand, Left Elbow Ulna Neuropathy, Large Bilateral Inguinal Hernia."  Id. at

9    18.  It would appear that the January 15, 2008 chrono was issued some three months prior to the

10    expiration of the October/November 2007 chrono.

11        *Disputed Facts*

12        Defendants contend that it is not in dispute that: defendant Beyer communicated

13    plaintiff's demand to speak to a sergeant or lieutenant to the Facility Sergeant; that the Facility

14    Sergeant's response was that he did not wish to speak to plaintiff and that he instructed defendant

15    Beyer to order plaintiff to move without further discussion; that defendant Beyer again ordered

16    plaintiff to move and he again refused; that it was only as a result of plaintiff's refusal to comply

17    with defendant Beyer's repeated order that Beyer summoned other officers to handcuff and escort

18    plaintiff to the Administrative Segregation Unit; that, although C/O Beyer was aware, on April

19    29, 2009, that plaintiff had physical disabilities, he was unaware of any limitation on plaintiff's

20    ability to lift more than two pounds; and that when refusing defendant Beyer's order to gather his

21    belongings, plaintiff did not inform defendant Beyer that a physician had placed a limitation on

22    how much he could lift.  DUF #'s 8 - 11, 15-16 [Dkt # 55-2], relying on defendant Beyer's Dec.

23    [# 55-3] at ¶¶ 6-9, 11-12 .

24    \\\\\\

25

26      [5] The document states that the chrono was ordered on 11/3/07, but transcribed on
10/23/07.  Dkt # 55-4, p. 18.

However, plaintiff contends that defendant Beyer refused plaintiff's request to speak to a sergeant or lieutenant outright before he was moved and then fabricated a CDC 115 RVR with false statements that plaintiff refused to move.  Opposition (Opp.) (# 56); Supplemental Opp. (#66), p. 2, citing his FAC and prospective inmate witness declarations and unspecified central file documents.  Plaintiff avers in his verified first amended complaint that, when ordered by defendant Beyer to get his property and move to another housing unit, plaintiff informed him about his physical disability and limitations under the ADA and that he had been ordered by the chief medical officer not to lift more than two pounds; plaintiff states that he moved boxes in excess of his weight limit in an effort to retrieve chronos to show Beyer he had had a recent ulnar nerve surgery, causing muscle atrophy, which movement caused plaintiff extreme pain and additional muscle atrophy .  FAC (# 12), [p. 3], cited in Supp. Opp., p. 2, along with medical records, which beyond the chronos previously referenced, which do not appear to be in evidence.[6]  It is not in dispute that defendant Beyer was already aware of plaintiff's ADA disabilities, but plaintiff also contends that Beyer was aware of the limitation on his lifting more than two pounds due to the chronos, noted above, which had begun on 10/23/07, and continued through until the present.  Opp. (# 56), p. 7.   Plaintiff insists that when defendant Beyer ordered him to move his personal property, Beyer told plaintiff "to just get your shit [] and I really don't care about your ADA and physical limitations."  Opp. (#56), p. 7[7] & Declarations of Harold

_____

[6] Plaintiff complains in his motion for sanctions that he has not been provided with copies of various documents from his central and medical files, even if that is so, plaintiff must do more than make generic references to documents in the file; it is not enough simply to state that medical records support his claim without specifically characterizing what those documents might show.

[7] A somewhat more mildly worded response was recorded by plaintiff as part of his response to an interrogatory propounded by defendant Beyer regarding what plaintiff had said to him about the two-pound lifting limitation, wherein plaintiff averred that he had informed defendant Beyer about his limitations and an order by the chief medical officer not to lift over two pounds with his left hand or arm and could produce chronos but that defendant Beyer stated "I don't care about your disabilities... ."  MSJ (# 55-4), p. 4; Opp. (# 56), p. 61.

Robertson, pp. 38-39, 45-47.[8]  Inmate Robertson, while working as a Building 3 porter at CSP-Solano on April 29, 2009, attests to having observed defendant Beyer tell plaintiff to pack his inmate property to move to a different building at which point plaintiff informed defendant Beyer of having had recent surgery on his left arm/hand and said that he could not lift more than two pounds.  Id., at 38, 45.  According to Inmate Robertson, after plaintiff asked to speak with a sergeant or lieutenant about his ADA physical limitations and doctor's orders, Beyer simply told him that he was just to get his "damn shit and move," and that he didn't care how plaintiff had to pack his property.  Id.  Declarant Robertson states that he saw plaintiff return to his cell and "attempt to lift a heavy cardboard box" and then drop it, holding "his left arm/hand while hollering and in severe pain... ."  Id., at 39, 45.  When plaintiff went back to where defendant Beyer stood in front of the Building 3 office area, Beyer told plaintiff that since he was not trying to move his "shit," he would have to handcuff and escort him to the hole.  Id., at 39, 46.  According to Robertson, plaintiff stated that he was not refusing to move but just wanted to talk to a sergeant about his physical ADA limitations, after which Beyer handcuffed plaintiff and "they" sent him to ad seg.  Id.  Robertson then declares that defendant Beyer returned to the building "very upset" and began to "roll up" plaintiff's property, angrily throwing into a clear trash bag the majority of plaintiff's personal paperwork, including legal letters and 602 grievances.  Id.  Plaintiff avers that defendant Beyer ordered the move in disregard of a physician's order and of the ADA and his constitutional rights and caused him further injury, which will require surgery and other medical treatment.  MSJ (# 55-4), p. 7; Opp. (# 56), p. 7, plaintiff's Response to Interrogatory No. 8, p. 64.  Plaintiff cites in support of his contention that he never refused to move defendant Beyer's "correct" testimony at the June 7, 2009 CDC-115 hearing, when plaintiff called defendant Beyer as a witness and Beyer "admitted" plaintiff had

---

[8] The later declaration at # 56, pp. 38-39, was dated as signed on July 11, 2011, and is not a precise duplicate of the declaration at pp. 45-47, which was dated as signed on February 10, 2011.

1    never refused to move as well as admitting awareness of plaintiff's disabilities (that portion not

2    in dispute).[9]  Opp. (# 56), p. 8.

3              Thus, whether plaintiff was, in fact, under a two-pound weight restriction on

4    lifting at the precise time that defendant Beyer directed plaintiff to move and whether plaintiff

5    informed Beyer of this restriction remains in dispute.  It is also unresolved that even if plaintiff

6    had had an opportunity to show this defendant the 2007 and 2008 chronos he has produced,

7    whether that would have sufficed to show that he was under such a restriction at the relevant

8    time.  However, the fact that defendant Beyer concedes that he was aware that plaintiff had

9    disabilities but apparently evinced no concern as to what those disabilities might entail does not

10   militate for a finding that no issue of fact exists.

11             Defendant Beyer is correct that plaintiff had no First Amendment right to speak to

12   a sergeant or lieutenant prior to his move.  MSJ (#55-1), p. 5, citing Jones v. North Carolina

13   Prisoners' Labor Union, Inc., 433 U.S. 119, 125, 97 S. Ct. 2532, 2537-38 (1977) ("the needs of

14   the penal institution impose limitations on constitutional rights, including those derived from the

15   First Amendment, which are implicit in incarceration"); Canty v. Booker, No. 97-3435-RDR,

16   2000 WL 134455, at *3 (D. Kan. Jan. 27, 2000) (holding that an inmate's First Amendment

17   rights "do not include any purported right to disobey orders or incite a disturbance."), Reply to

18   Supp. Opp. (# 69), p. 5.  There does not appear to be any basis for a Fourth Amendment claim as

19

20             [9] In the CDC-115 hearing on June 7, 2009, plaintiff evidently called defendant Beyer as a
     witness and the following exchange occurred: "Q1) On April 29, 2009 did I (Inmate Haprool

21   [sic]) ever say or make a statement that I was refusing a bed move?"  "A1) He stated, 'I'm not
     refusing a bd bed move, but I'm not going anywhere until I speak with a Sergeant or Lieutenant.

22   If I can't do that, I'll speak to the Captain in Ad/Seg.'[']  "Q2) On April 29th, 2009, did Inmate
     Harpool mention because of my (ADA) American With a Disability and several concerns to

23   Reasonable Accommodation, I request to speak with the Sergeant or Lieutenant?"  "A2) He
     stated, 'I'm DNM which stands for Do Not Move.'"  "Q3) Were you aware that Inmate Harpool,

24   because of severe muscle atrophy of the left hand/arm, he cannot lift over two pounds?  If not
     aware, why have you never reviewed his (ADA) concerns/Reasonable Accommodation

25   requirements, that should be noted within the building/unit ADA log book?"  "A3) I'm aware of
     his disabilities.  His ADA issues are maintained in the unit ADA book, with Harpool's 1845.  I

26   am unaware of a listed restriction for lifting."  MSJ (# 55-3), p. 5; Opp. (#56), p. 50 (excerpt of
     CDC-115 hearing at pp. 49-54).

1    well.  Plaintiff has no claim under the Fourth Amendment for an unreasonable search, if that is

2    what he intends.  U. S. v. Kincade, 739 F.3d 813, 822 n. 17 (9th Cir. 2004), quoting Hudson v.

3    Palmer, 468 U.S. 517, 526, 104 S.Ct. 3194 (1983) ("[S]ociety is not prepared to recognize as

4    legitimate any subjective expectation of privacy that a prisoner might have in his prison cell....

5    [A]ccordingly, the Fourth Amendment proscription against unreasonable searches does not apply

6    within the confines of the prison cell.").

7         To the extent plaintiff seeks to raise a Fourth Amendment claim, it must be

8    construed as related to defendant Beyer's having allegedly moved some of his property from his

9    cell after plaintiff was placed in ad seg.  Plaintiff has no claim under the Fourth Amendment for

10   an unreasonable search, if that is what he intends.  Somers v. Thurman, 109 F.3d 614, 617 (9th

11   Cir. 1997) (Fourth Amendment prohibition against unreasonable searches not applicable to

12   prison cell); U. S. v. Kincade, 739 F.3d 813, 822 n. 17 (9th Cir. 2004), quoting Hudson v.

13   Palmer, 468 U.S. 517, 526, 104 S.Ct. 3194 (1983) ("[S]ociety is not prepared to recognize as

14   legitimate any subjective expectation of privacy that a prisoner might have in his prison cell....

15   [A]ccordingly, the Fourth Amendment proscription against unreasonable searches does not apply

16   within the confines of the prison cell.").  See also, Florence v. Board of Chosen Freeholders of

17   County of Burlington, et al, ___ U.S.___, 132 S. Ct. 1510 (2012), wherein the Supreme Court

18   determined that even strip searches of detainees do not require reasonable suspicion of a

19   concealed weapon or other contraband and violate neither the Fourth or Fourteenth Amendments.

20        With regard to any claim under the Fourteenth Amendment against defendant

21   Beyer, defendant is correct that it does not appear that any such claim is sustainable.  It is

22   undisputed that plaintiff spent about eight to ten days in ad seg[10] as a result of defendant Beyer's

23   disciplinary charge against him.  Plaintiff offers no evidence that he was in that relatively brief

24   _____

25   [10] This assertion by plaintiff, who had been placed in ad seg on April 29, 2009, is
     essentially corroborated by the Senior Hearing Officer at the June 7, 2009 disciplinary hearing,
     wherein it is stated that the SHO, prior to the hearing, had verified that plaintiff "had been

26   released from ad[]seg for approximately three weeks."   MSJ (# 55-3), p. 6.

span of time subjected to an "atypical and significant hardship...in relation to the ordinary

incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).  To

the extent plaintiff intended to claim he was subjected by defendant Beyer to a violation of his

equal protection rights because he was placed in ad seg, he does not sufficiently set such a claim

forth.  "States are not required by the Fourteenth Amendment to make special accommodations

for the disabled, so long as their actions toward such individuals are rational."  Board of Trustees

of University of Alabama v. Garrett, 531 U.S. 356, 367, 121 S. Ct. 955 (2001); id., 531 U.S. at

368 ("If special accommodations for the disabled are to be required, they have to come from

positive law and not through the Equal Protection Clause.").

As to his claim against defendant Beyer pursuant to the Eighth Amendment, while

defendant claims that other than a disciplinary charge which resulted in no time credit loss for

plaintiff, plaintiff suffered no injury, plaintiff counters that he was physically injured by

defendant Beyer's order to move without taking into consideration his physical limitations for

which he had had medically recommended restrictions and failure to permit him to speak with a

supervisor in the person of a higher ranking correctional officer with supervisory authority.

Although it is not clear to the court whether that injury, or re-injury, occurred as a result of

plaintiff's lifting boxes seeking to find documentation to prove to defendant Beyer that he did

have a two-pound weight restriction that precluded him from lifting boxes or because he was

compelled to lift his belongings for the move, he also claims his re-injury caused him to need

further surgery.  Defendant Beyer concedes his awareness of plaintiff's having disabilities and

there is a genuine issue of material fact as to whether plaintiff informed defendant of the two-

pound lifting restriction at the time when he was asking/demanding to speak to a lieutenant or

sergeant.  The applicable Eighth Amendment standard would be whether defendant was

deliberately indifferent to an excessive risk to plaintiff's health in ordering him to move.

"A prison official acts with 'deliberate indifference ... only if the [prison official]

knows of and disregards an excessive risk to inmate health and safety.' Gibson v. County of

18

1   Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir.2002) (citation and internal quotation marks

2   omitted)."  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).  "Under this standard, the

3   prison official must not only 'be aware of facts from which the inference could be drawn that a

4   substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  Id.,

5   citing Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 [] (1994).  "'If a [prison official]

6   should have been aware of the risk, but was not, then the [official] has not violated the Eighth

7   Amendment, no matter how severe the risk.'"  Id., quoting Gibson, 290 F.3d at 1188 (citation

8   omitted).

9          In Farmer v. Brennan, 511 U.S. at 835, 114 S. Ct. at 1978, the Supreme Court

10   defined a very strict standard which a plaintiff must meet in order to establish "deliberate

11   indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

12   However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

13   which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

14   Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

15   should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

16          On these facts, plaintiff has raised a sufficient issue of material fact with respect

17   to his claim that  his Eighth Amendment rights were violated by defendant Beyer.

18                *Retaliation*

19          To the extent that plaintiff alleges that defendant Beyer brought false disciplinary

20   charges against plaintiff in retaliation for his having filed prison grievances, plaintiff simply does

21   not provide sufficient evidence against defendant Beyer on this claim to raise a genuine fact

22   dispute.

23          Inmates have a right to be free from the filing of false disciplinary charges in

24   retaliation for the exercise of constitutionally protected rights.  Pratt v. Rowland, 65 F.3d 802,

25   807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Rizzo v. Dawson,

26   778 F.2d 527, 532 (9th Cir. 1985).  The Ninth Circuit treats the right to file a prison grievance as

1    a constitutionally protected First Amendment right.  Hines v. Gomez, 108 F.3d 265 (9th Cir.

2    1997); see also Hines v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to

3    utilize a prison grievance procedure is a constitutionally protected right, cited with approval in

4    Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d 75 (2nd Cir.

5    1996) (retaliation for pursing a grievance violates the right to petition government for redress of

6    grievances as guaranteed by the First and Fourteenth Amendments); Jones v. Coughlin, 45 F.3d

7    677, 679-80 (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation

8    for filing prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing

9    disciplinary actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854

10   F.2d 584, 589 (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of

11   grievances is precisely the sort of oppression that section 1983 is intended to remedy" (alterations

12   and citation omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in

13   retaliation for complaint about food actionable).

14           In order to state a retaliation claim, a plaintiff must plead facts which suggest that

15   retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor

16   behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th

17   Cir. 1989).  The plaintiff must also plead facts which suggest an absence of legitimate

18   correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing Rizzo at 532).

19   Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v. Ruggiero, 830 F.2d

20   136, 139 (9th Cir. 1987).  However, even threats of bodily injury are insufficient to state a claim,

21   because a mere naked threat is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810

22   F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice, a

23   prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's

24   constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

25           This is not to say that a vexatious grievance filer can never be punished.

26   Vexatious litigants may be the subject of court discipline, and the undersigned would find it

20

1   incongruous that while the courts can punish vexatious filings, prison officials may not.  Indeed,

2   the right to petition for grievances is not absolutely protected; such a right has no greater

3   protection than speech in general.  Rendish v. City of Tacoma, 123 F.3d 1216 (9th Cir. 1997).  In

4   the prison context, one's free speech rights are more constricted from what they would be on the

5   outside.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400 (1987).  Again, plaintiff

6   must show that the actions or omissions constituting the "retaliation" served no legitimate

7   penological goal.

8        Plaintiff does not produce evidence sufficient to demonstrate that his having been

9   charged with having failed to comply with defendant Beyer's order to move was retaliatory for

10   his having filed an inmate grievance or for his participation with the Men's Advisory Council,

11   even if the charge was "false" in plaintiff's estimation, inasmuch he maintains he never refused

12   to move.  It is undisputed that defendant Beyer received instruction to move plaintiff from his

13   cell and that plaintiff was unwilling to do so without first having explained his physical

14   limitations to a higher ranking officer.  That plaintiff may have been unable to make the move in

15   light of his physical limitations does not render defendant Beyer's subsequent placement of him

16   in ad seg for failure to comply with his order a retaliatory one and plaintiff does not demonstrate

17   that it had anything to do with plaintiff's having filed grievances, much less than that it was a

18   "substantial" or "motivating" factor.

19        Summary judgment should be entered for defendant Beyer on the retaliation

20   claim.

21        <u>Defendants Carter and Fowler</u>

22        <u>*Undisputed Facts*</u>

23        In April 2009, defendant Carter was a CDCR C/O at CSP-Solano, Facility I.  DUF

24   # 3.  In April 2009, defendant Fowler was a Correctional Sergeant with CDCR at CSP-Sol,

25   Facility I.  DUF # 4.

26   \\\\\

1      *Disputed Facts*

2          At DUF # 19 & # 21, defendant Carter declares that he did not make false

3  allegations about plaintiff or threaten him in response to any grievances plaintiff made against

4  CDCR staff or for plaintiff's work on the Men's Advisory Council.  MSJ, (# 55-5), defendant

5  Carter's Declaration at ¶¶ 4-5.)  At DUF # 20, defendant Fowler declares he did not threaten to

6  move plaintiff in response to any grievances plaintiff made against CDCR staff or for plaintiff's

7  work on the Men's Advisory Council.  Id., (# 55-6), defendant Fowler's Declaration, ¶ 4.  At

8  DUF # 22, defendants aver that plaintiff can present no evidence supporting his contentions that

9  defendant Carter made false statements about him, or that defendant Fowler threatened to move

10  him for submitting grievances or doing work for the Men's Advisory Council.  MSJ (# 55-2);

11  (#55-4) Ex. 2, plaintiff's response to Interrogatories 9-12, attached to declaration of David

12  Carrasco.[11]

13          In his verified amended complaint, plaintiff contends that "false misconduct

14  charges" i.e., the "false" claim that he refused to move from his cell when ordered, were brought

15  against him in retaliation for his having written [one or more] prison grievances and for his

16  "doing [a] Men's Advisory Council report to the captain, associate warden [sic]."  FAC, (#12), p.

17  4.  He alleges that on or about April 28, 2009, defendant "C/O Carter made false allegations to

18  defendant Correctional Sergeant Fowler, who threatened to move plaintiff if he "disrespected any

19  _____

20          [11] See, e.g., Defendants' Interrogatory # 9: "Why do you believe that defendant Fowler
   was retaliation against you for writing grievances, when on April 28, 2009, he threatened to
21  move you if you were disrespectful to any correctional officer?"  Plaintiff's Response: "See the
   information contained within the 'First Amended Complaint, that truly presents a cognizable
22  claim for relief, also see 'affidavits,' exhibits, production of documents, etc., and inmate witness
   to testify at trial that will clearly prove the allegations herein."  Dkt # 55-4 at 7.  See also,
23  Defendants' Interrogatory # 10: "Why do you believe that defendant Carter told Sergeant Fowler
   that you had been 'snitching' in the C/o's by writing grievances and Men's Advisory Council
24  reports?"  Plaintiff's response: "Information contained within the 'First Amended Complaint,
   that shows a cognizable claim for relief and 'affidavits,' exhibits, production of documents,
25  inmate witnesses at trial will testify and prove the allegations/claims against defendant Carter and
   defendant Fowler, etc."  Id., at 7-8.
26

1  C/O's."  Supp. Opp. (# 66), citing id. [at 7].  Plaintiff states the defendant Carter said "You've

2  been snitching on the C/O's by writing prison grievance [sic] and doing Men's Advisory Council

3  Report to the Captain, Associate Warden."   FAC, p. 4.

4            In support of his opposition to defendants' motion, plaintiff submits two affidavits

5  from Inmate Robertson and one from plaintiff attesting under oath to what defendant Peavey

6  would say at trial. Opp., (# 56), pp. 38-41, 45- 47.  Defendants object to the use of Inmate

7  Robertson's declaration in support of plaintiff's claims at least with respect to defendants Carter

8  and Fowler, citing Fed. R. Civ. P. 37(c), arguing that plaintiff should not be permitted to rely on

9  such evidence when he failed to identify this witness in response to defendants' interrogatories as

10 to the basis of his claims of retaliation and false allegations by these defendants, stating, in

11 relevant part, that, among other exhibits, he had inmate witnesses to testify at trial as to his

12 claims against these defendants.  Opp. (# 55-1), p. 7, (# 55-4), pp. 7-9, Reply (# 58), p. 6.   It is

13 true that if plaintiff knew the name of this or any other witness at the time of responding to the

14 interrogatories, he should have disclosed it, or at a minimum should have provided the

15 information that any such witness testimony would disclose.  However, Rule 37 does not *require*

16 the sanction of disallowing information a party should have provided pursuant to interrogatory

17 requests must be imposed when the party relies on such evidence in opposition to a summary

18 judgment motion; in addition, defendants did not seek an order compelling a further response by

19 plaintiff when he simply stated that he intended to present inmate testimony.  Nor can it have

20 been an entire surprise to defendants prior to their bringing their motion for summary judgment,

21 when, in a premature motion by plaintiff for trial witnesses, filed originally on October 14, 2011,

22 plaintiff included two of the inmate affidavits.  Dkt # 52.   Again, in light of plaintiff's pro se

23 status, the court will consider the evidence set forth in Declarant Robertson's affidavit with

24 respect to these two defendants, which in any event, defendants also aver contains inadmissible

25 hearsay or opinion and otherwise does not implicate plaintiff's First Amendment rights.  Only to

26 the extent that affidavits by Inmate Robertson, as well as by Inmate Peavey, do not contain

evidence that could be rendered admissible at trial will any such evidence not be considered. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment); see also Aholelei v. Hawaii Dept.of Public Safety, 220 Fed. Appx. 670 *1(9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial).[12]

In his affidavit from Inmate Robertson, dated February 10, 2011, Robertson declares that plaintiff was on the Men's Advisory Council and that one day before plaintiff was ordered to be moved, Robertson heard defendants Carter and Fowler tell plaintiff "that if he ever threatened any C/O's, he would be moved."  Opp. (# 56), Robertson Dec. at 46; see also, Supp. Opp. (# 66), Robertson Dec., at 60.  Robertson also declares that numerous [unidentified] other inmates heard defendant Carter tell plaintiff he was a snitch and thereby placed plaintiff's life in danger and, although it is not entirely clear whether Robertson is saying he overheard it, he goes on to say that defendant Carter told plaintiff he had been snitching on correctional officers to the captain, associate warden, etc., by writing administrative grievances and M.A.C. reports.  Id. Robertson declares that he heard defendant Carter (along with previously dismissed defendants) say "that if they just write any kind[] of CDC-115 on the plaintiff, he will never get a parole date... ."  Id. (# 56), at 47; # 66 at 61.  Robertson goes on to state that "everyone (inmates) knew that CSP-Solano correctional officers and staff "was [sic] writing false statement on CDC-115 plus retaliating against the plaintiff only because he was an advocate for the inmate population at CSP-Solano plus wrote numerous grievances against correctional staff that was abusing their

---

[12] Ninth Circuit Rule 36-3, in accordance with Fed. R. App. P. 32.1, permits citation to unpublished dispositions and orders issued on or after January 1, 2007.  However, such rulings "are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."  Ninth Circuit Rule 36-3(a).

1   discretion & prison laws." Id., at 48.  The court does find that to the extent that Robertson makes

2   claims about what others may have heard or what others knew, the declaration does contain

3   inadmissible hearsay.  See Fed. R. Evid. 801. But, the gist of the admissions allegedly heard are

4   admissible.

5               As to Inmate Peavey, plaintiff swears under penalty of perjury that this individual

6   has agreed to testify to having overheard statements from defendant Carter loudly telling plaintiff

7   he was a snitch with regard to correctional officers in the form of administrative grievances and

8   that both defendants Carter and Fowler said that if they wrote any kind of CDC-115 report

9   against plaintiff he would never get a parole date.  See, e.g., Supp. Opp. (# 66), at 67.  Plaintiff

10  has not submitted a declaration by Inmate Peavey, but rather an attestation as to what this inmate

11  is willing to testify to at trial.  Of course, should this inmate testify at trial, he could offer this

12  testimony on his own behalf while plaintiff could not attest to what he said as that would, indeed,

13  be hearsay.  However, a showing of what a witness would be able to testify to by plaintiff under

14  oath is sufficient for the court to permit such an inmate witness for trial if the proffered testimony

15  would be relevant and not, for example, unnecessarily duplicative.  To counter the summary

16  judgment motion, plaintiff should have produced the affidavit from Inmate Peavey, but the court

17  will not find that the representation of evidence that could be made admissible at trial, in the

18  form of Peavey's testimony, should be excluded.  In any event, both plaintiff and Inmate

19  Robertson attest, under oath, to statements giving rise to a reasonable inference that the

20  unexplained move ordered of plaintiff the next day or thereabouts could have been retaliatory,

21  that is, could have been ordered because plaintiff engaged in the protected conduct of filing

22  administrative grievances.

23              In general, prison officials' housing and classification decisions do not give rise to

24  federal constitutional claims encompassed by the protection of liberty and property guaranteed by

25  the Fifth and Fourteenth Amendments.  See Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.

26  Ct. 2701 (1972).  Nor does the Constitution guarantee a prisoner placement in a particular prison

1    or protect an inmate against being transferred from one institution to another.  Meachum v. Fano,

2    427 U.S. 215, 223-225, 96 S. Ct. 2532, 2538 (1976).

3              However, plaintiff cannot be subjected to retaliation for engaging in protected

4    conduct and plaintiff has pled facts which suggest that retaliation for the exercise of protected

5    conduct was the "substantial" or "motivating" factor behind the defendant's conduct, Soranno's

6    Gasco, Inc. v. Morgan, 874 F.2d at 1314, and also pled facts which suggest an absence of

7    legitimate correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing

8    Rizzo at 532).  Defendants are correct (MSJ (#55-1), at 6)that verbal harassment alone is

9    insufficient to state a claim, Oltarzewski v. Ruggiero, 830 F.2d at 139, and even threats of bodily

10   injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing

11   the act itself.  Gaut v. Sunn, 810 F.2d at 925.  Defendants concede that a threat made in

12   retaliation, however, may be cognizable under the First Amendment.  MSJ (# 55-1) at 6, citing

13   Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009) ("the mere *threat* of harm can be an

14   adverse action, regardless of whether it is carried out because the threat itself can have a chilling

15   effect" [emphasis in original]).  Defendants argue that to the extent Inmate Robertson states that

16   plaintiff was warned not to threaten the C/O's by defendants Carter and Fowler, First

17   Amendment protections would not apply to threats by plaintiff.  Reply (# 58), at 8; Reply to

18   Supp. Opp. (# 69) at 6, citing Fogel v. Collins, 531 F.3d 824, 830 (9th Cir. 2008).  However, this

19   contention does not appear apposite inasmuch as there is no evidence presented of plaintiff's

20   having threatened correctional officers.

21             To show that his protected conduct, in this case, filing inmate administrative

22   grievances, was the substantial or motivating factor behind the defendants' conduct, plaintiff only

23   needs to "'put forth evidence of retaliatory motive, that, taken in the light most favorable to him,

24   presents a genuine issue of material fact as to [defendants'] intent" in threatening him.

25   Brodheim, 584 F.3d at 1271, quoting Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir.2003).  As to

26   the move that was ordered the next day, there is a logical inference to be drawn of a connection

1    between the alleged threats and the ordered move and defendants provide no evidence to show

2    the legitimacy of the move.

3        *Qualified Immunity*

4        The court need not tarry long with the contention that to the extent an Eighth

5    amendment claim has been stated against Beyer in his individual capacity, he is entitled to

6    qualified immunity.  In most Eighth Amendment cases, the requirement that a defendant

7    demonstrate deliberate indifference renders the qualified immunity "reasonableness" inquiry a

8    moot point.  Suffice it to say that if a jury found that Beyer acted in deliberate indifference to

9    plaintiff's medical condition, a reasonable corrections officer could not argue that the law

10   forbidding such was not clearly established.  See, e.g., Foster v. Runnels, 554 F.3d 807, 815-16

11   (9th Cir. 2009).

12       As to defendants Carter and Fowler, the court must resolve the question of their

13   entitlement to qualified immunity.  In resolving a claim for qualified immunity the court

14   addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff,

15   demonstrate that the officers' actions violated a constitutional right and (2) whether a reasonable

16   officer could have believed that his conduct was lawful, in light of clearly established law and the

17   information the officer possessed.  Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987).

18   Although the Supreme Court at one time mandated that lower courts consider these two

19   questions in the order just presented, more recently the Supreme Court announced that it is

20   within the lower courts' discretion to address these questions in the order that makes the most

21   sense given the circumstances of the case.  Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808

22   (2009).

23       The court has found that plaintiff has raised a genuine issue of fact as to whether

24   or not plaintiff's First Amendment rights were violated by defendants Carter and Fowler.

25   Defendants contend that they could have believed in light of undisputed facts their conduct to be

26   lawful.  MSJ (#55-1), pp. 12-13.  However, drawing all reasonable inferences from the facts

27

1  placed before the court in favor of plaintiff, clearly established law would not permit a reasonable

2  officer in possession of what information these defendants possessed to believe the conduct at

3  issue to be lawful.  Summary judgment on plaintiff's retaliation claim should be denied as to

4  defendants Carter and Fowler.

5          Accordingly, IT IS ORDERED that:

6          1.  Plaintiff's "motion for additional sanctions," filed on May 7, 2012 (# 70), is

7  properly construed to be a reply to defendants' opposition (# 65) to plaintiff's motion for

8  sanctions, filed on March 12, 2012 (#64), and the Clerk of the Court is to note this modification

9  in the text entry for docket # 70;

10         2.  Plaintiff's motion for sanctions, filed on March 12, 2012 (# 64), is denied.

11         IT IS RECOMMENDED that defendants' motion for summary judgment, filed on

12  October 26, 2011 (# 55), be GRANTED as to defendant Beyer with the exception of the Eighth

13  Amendment claim which should be DENIED, and be DENIED, on plaintiff's First Amendment

14  retaliation claim as to defendants Carter and Fowler.  There has been no adjudication of

15  plaintiff's ADA claim.

16         These findings and recommendations are submitted to the United States District

17  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

18  days after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21  shall be served and filed within fourteen days after service of the objections.  The parties are

22  advised that failure to file objections within the specified time may waive the right to appeal the

23  District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

24  DATED: July 5, 2012

25                          /s/ Gregory G. Hollows
                     UNITED STATES MAGISTRATE JUDGE

26  GGH:009 - harp1253.msj

28